IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAQUAN WRIGHT,

     Plaintiff,

   v.                                  Civil Action No. 3:23cv658

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

     Defendants.

## MEMORANDUM OPINION

     Laquan Wright, a Virginia inmate proceeding with counsel, filed this 42 U.S.C. § 1983 action.[1]  The matter is proceeding on the Amended Complaint ("Complaint"), (ECF No. 29), and is before the Court on the Partial Motion to Dismiss filed by Defendant Virginia Department of Corrections ("VDOC") and Defendant Johnson, (collectively "Defendants"), (ECF No. 32).

     The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the alleged facts and legal contentions, and argument would not aid in the decisional process.  For the reasons articulated below, the Partial Motion to Dismiss will be GRANTED in part and DENIED in part.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

## I. Standard for a Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In

2

order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Allegations in the Amended Complaint

### A. Allegations and Claims

In the Complaint, Mr. Wright names as Defendants: D. Williams, a Lieutenant at Sussex I State Prison ("Sussex I"); Courtney Solomon, a correctional officer at Sussex I; Captain Johnson, a captain at Sussex I; and the VDOC. (ECF No. 29, at 2.) Mr. Wright alleges the following:[2]

### Physical Assault

13. Plaintiff is physically disabled, requires a wheelchair, and uses a colostomy bag.

14. On or around April 27, 2023, Plaintiff was in his assigned cell at Sussex I State Prison.

15. Every morning, Plaintiff is released from his cell and permitted to go out and change or let air out of his colostomy bag.

16. Usually, when Plaintiff comes back into the facility[,] the correctional officers allow him to stay outside of his cell because he is a pod worker, and his duties include acts such as cleaning appliances.

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling and punctuation errors in the parties' submissions.

17. However, on or around April 27, 2023, when Plaintiff came back inside of the facility after emptying his colostomy bag, correctional officers were passing out breakfast trays.

18. Plaintiff then went to the breakfast table and started eating.

19. Defendant Williams then made an announcement over the speaker, and stated: "if you are not a worker you need to go to your cell."

20. Plaintiff assumed Defendant Williams was not addressing Plaintiff because he is a worker.

21. Defendant Williams then repeated the message.

22. Defendant Williams then stated she was talking to Plaintiff.

23. Plaintiff asked Defendant Williams how he can work and eat at the same time.

24. Plaintiff then began to roll his wheelchair toward his cell.

25. Defendant Williams then approached Plaintiff as he was going toward his cell pursuant to her instructions.

26. Plaintiff was then in the doorway to his cell, and backing into the cell with his wheelchair, when Defendant Williams then approached Plaintiff and forcefully and violently shoved him in the chest, pushing him into his cell.

27. In response to being violently pushed by Defendant Williams without any justification, Plaintiff lightly tossed a small empty plastic cup at Defendant Williams' body.

28. At this time, Plaintiff was in his cell, Defendant Williams was outside of his cell, and the cell door began to close.

29. As the cell door began to close, Defendant Williams ran into Plaintiff's cell and began attacking Plaintiff, striking him the face with closed fists.

30. Defendant Williams then pulled Plaintiff out of his wheelchair and threw Plaintiff on the ground.

31. While Plaintiff was on the ground, Defendant Williams continued to strike him with closed fists as he attempted to protect himself from the blows.

32. The cell door then opened back up.

4

33. Despite Plaintiff being physically disabled, thrown out of his wheelchair and onto the ground, and being continuously struck in the face by Defendant Williams, Defendant Courtney Solomon entered the cell and restrained Plaintiff's arms while Defendant Williams continued to assault Plaintiff, thus turning Plaintiff into a punching bag without the ability to protect himself.

34. Eventually, Defendant Williams stopped her physical assault and further correctional officers came to the scene.

35. Defendant Williams then made the following statement, or one similar to it, to her supervisors: "I told you all if someone pisses me off again this was what was going to happen."

36. Defendant Williams made this statement to Defendant Captain Johnson[3] and other unknown VDOC employees.

37. Defendant Williams' statement demonstrates that her currently unknown supervisors and/or coworkers, including but not limited to Defendant Johnson, were aware that Defendant Williams was going to physically attack and inmate and yet did nothing to stop it.

38. Defendant Captain Johnson eventually placed Plaintiff in handcuffs.

39. Correctional Officers then took Plaintiff to restricted housing for approximately two hours, then transferred Plaintiff to Sussex II prison hours later.

40. Correctional [O]fficers eventually took photos of Plaintiff's injuries.

41. Plaintiff suffered various injuries, including scratches and bruising on his face and general soreness from being thrown out of his wheelchair and onto the ground.

## Sussex II Accessibility

42. After being transferred to Sussex II, Plaintiff's disability accommodations were ignored.

43. Specifically, Sussex II does not have handicap accessible cells on the compound.

44. Consequently, Plaintiff had on at least one occasion fallen out of his bed, as his large air mattress—which is required due to his disability—was too big for the assigned bed, causing the air mattress to flip over and throw Plaintiff on the ground.

---

[3] For purposes of identification, Defendant Captain Johnson is described as a female at a below average height, with light black skin, and dreadlocks.

45. Further, because Sussex II is not handicap accessible, Plaintiff had to maneuver his body in uncomfortable positions countless times. As a result of this maneuvering, he endured severe back pain.

46. Plaintiff immediately made the accommodation complaints to Sussex II, and Sussex II officials acknowledged that it did not have the accommodations for Plaintiff.

47. Plaintiff was forced to stay at Sussex II for approximately 3 months before he was transferred to a facility that could accommodate his disability.

(ECF No. 29 ¶¶ 13–47.)

Mr. Wright raises the following claims for relief:[4]

Count I:       Defendants Williams and Solomon violated Mr. Wright's Eighth Amendment rights when they used excessive force against him and Defendant Johnson "was aware of Defendant Williams's upcoming actions, and yet Defendant Johnson, a supervisor, took no actions to stop it and permitted the acts to take place." (ECF No. 29 ¶¶ 50–55.)

Count II:      "Defendants Williams, Solomon, and Johnson failed to use the degree of care of which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another" and were thereby negligent.[5] (ECF No. 29 ¶¶ 56–58.)

Count III:     "Defendants Williams, Solomon, and Johnson took actions which shows indifference to others as constitutes an utter disregard of prudence" and were thereby grossly negligent. (ECF No. 29 ¶¶ 59–61.)

Count IV:      "Defendants Williams, Solomon, and Johnson acted consciously in disregard of Plaintiff's rights or acted with reckless indifference to the consequences, with the defendants aware, from the knowledge of existing circumstances and conditions, that their conduct probably would cause injury to Plaintiff" and thereby were willfully and wantonly negligent. (ECF No. 29 ¶¶ 62–64.)

---

[4] The Court notes that although Mr. Wright purports to raise nine claims, there is no Count V alleged.

[5] The Court exercises supplemental jurisdiction over Wright's state law claims of negligence pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

Count VI:       "Defendant Williams engaged in an overt act intended to place Plaintiff in fear or apprehension of bodily harm, which did in fact create such reasonable apprehension in Plaintiff, when Defendant Williams lunged toward Plaintiff, pulled him out of the wheelchair, and began to strike him while Plaintiff watched the events unfold" which amounts to assault. (ECF No. 29 ¶¶ 65–67.)

Count VII:      "Defendant Williams and Solomon willfully and unlawful[ly] touched Plaintiff when Defendant Williams pulled him out of his wheelchair and struck him multiple times, and when Defendant Solomon held Plaintiff down with force during the attack" which amounts to battery. (ECF No. 29 ¶¶ 68–70.)

Count VIII:     Defendant VDOC violated Mr. Wright's rights under the Americans with Disabilities Act ("ADA") when it "excluded [him] from participation in or denied the benefits of services, programs, or activities . . . or subjected [him] to discrimination." (ECF No. 29 ¶¶ 71–78.)

Count IX:       Defendant VDOC violated Mr. Wright's rights under the Rehabilitation Act when it "excluded [him] from participation in or denied the benefits of services, programs, or activities . . . or subjected [him] to discrimination." (ECF No. 29 ¶¶ 79–85.)

Mr. Wright seeks monetary damages, attorney's fees and costs, and "any other and further relief it deems equitable and just." (ECF No. 29, at 12–13.)

## B.   The Partial Motion to Dismiss

Defendants VDOC and Johnson have filed a Partial Motion to Dismiss seeking the dismissal of Counts I through IV, and VIII. Specifically, they argue that: (1) Defendant Johnson did not violate Mr. Wright's Eighth Amendment[6] rights either under a theory of direct or supervisory liability; (2) Defendant Johnson was not negligent; (3) Mr. Wright's ADA claim for damages against Defendant VDOC is not available; and (4) his claim for injunctive relief is moot. For the reasons discussed below, the Partial Motion to Dismiss will be GRANTED IN PART because Mr. Wright has not plausibly alleged a claim for supervisory liability in Claim I

---

[6] The Eighth Amendment to the United States Constitution states, in pertinent part: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" U.S. Const. Am. VIII (emphasis added).

7

and has not plausibly alleged an ADA claim in Count VIII.  However, Mr. Wright has adequately pled facts to allow Count I, alleging that Defendant Johnson directly violated his Eighth Amendment rights, and Counts II through IV, alleging that Defendant Johnson was negligent, to proceed.  Therefore, the Partial Motion to Dismiss will be DENIED as to Count I on a theory of deliberate indifference and Counts II through IV.

### III.  ANALYSIS

#### A.    Eighth Amendment Claim (Count I)

In Count I, Mr. Wright contends that Defendants Williams and Solomon violated Mr. Wright's Eighth Amendment rights when they used excessive force against him, and that Defendant Johnson "was aware of Defendant Williams's upcoming actions, and yet Defendant Johnson, a supervisor, took no actions to stop it and permitted the acts to take place." (ECF No. 29 ¶¶ 51–55.) Mr. Wright primarily seeks to impute liability to Defendant Johnson based on a theory of supervisory liability.  (ECF No. 29 ¶¶ 54–55.)  However, Mr. Wright also argues that "Defendant Johnson is directly liable for the acts of Defendants Williams and Solomon." (ECF No. 29 ¶ 54.)  Mr. Wright has not alleged that Defendant Johnson used excessive force against him and, according to Mr. Wright, she was not even present during the use of force.  Therefore, Defendant Johnson was not "directly liable" on an excessive force theory as Mr. Wright has pled.  Nevertheless, although poorly pled, it appears that Mr. Wright truly intends to bring an Eighth Amendment claim of deliberate indifference against Defendant Johnson.[7]

#### 1.    Deliberate Indifference

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that

---

[7] Indeed, Mr. Wright never uses the phrase deliberate indifference in his Amended Complaint.

subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted). To adequately plead such extreme deprivation, Mr. Wright "must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Id.* at 634 (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). The Supreme Court emphasized that it is *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those

general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168

(citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating

same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a

plaintiff to assert facts sufficient to form an inference that "the official in question subjectively

recognized a substantial risk of harm" and "that the official in question subjectively recognized

that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372

F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### a.      Mr. Wright Satisfies the Objective Prong

Mr. Wright alleges that Defendant Williams shoved Mr. Wright into his cell, struck him

with closed fists, threw him onto the ground, and continued striking him with closed fists, despite

Defendant Solomon restraining Mr. Wright. (*See* ECF No. 29 ¶¶ 26–33). Mr. Wright "suffered

various injuries, including scratches and bruising . . . and general soreness." (ECF No. 29 ¶ 41.)

At this juncture, the Court assumes that Mr. Wright suffered "a serious or significant physical or

emotional injury." *De'Lonta*, 330 F.3d at 634 (quoting *Strickler*, 989 F.2d at 1381). Thus, Mr.

Wright's injuries were sufficiently serious to satisfy the objective prong of an Eighth

Amendment claim.

### b.      Mr. Wright Satisfies the Subjective Prong

The deliberate indifference claim against Defendant Johnson turns on whether Defendant

Johnson knew of a substantial risk that Defendant Williams could assault Mr. Wright and

essentially ignored that risk. Courts have found prison officials to be actually aware of a

sufficiently substantial risk of assault "where custodians know of threats to specific prisoners

posed by a specific source." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing

*Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). "On the other hand, as the vagueness of a

10

threat increases, the likelihood of actual knowledge of impending harm decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

Here, Mr. Wright asserts that after the use of force concluded, "Defendant Williams then made the following statement, or one similar to it, to her supervisors: 'I told you all if someone pisses me off again this was what was going to happen.'" (ECF No. 29 ¶ 35.) According to Mr. Wright, "Defendant Williams made this statement to Defendant Captain Johnson and other unknown VDOC employees." (ECF No. 29 ¶¶ 35–36 (footnote omitted).) While Defendant Williams's statement reflects that she did not make a threat against a specific inmate, the pleadings suggest that Defendant Johnson knew of a threat to the next inmate who angered Defendant Williams. According to Mr. Wright, Defendant Williams previously stated to Defendant Johnson and others that the violence that occurred "was what was going to happen" if someone angered her. (ECF No. 29 ¶ 35). Thus, Captain Johnson was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] . . . ." *See Farmer*, 511 U.S. at 837.

It is unclear at this juncture whether Defendant Johnson "subjectively recognized that [her] actions were 'inappropriate in light of that risk.'" *See Cleveland*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2). However, at this stage, Mr. Wright simply must allege a claim that is "plausible on its face." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Based on her alleged statement, a reasonable inference may be drawn that Defendant Williams warned Defendant Johnson that violence would occur if an inmate angered her, and Defendant Johnson heard this and drew "the inference between those general facts and the specific risk of harm confronting the inmate." *See Iqbal*, 556 U.S. at 678; *Quinones*, 145 F.3d at 168 (citing *Farmer*,

11

511 U.S. at 837). Therefore, Mr. Wright plausibly alleges an Eighth Amendment claim of deliberate indifference against Defendant Johnson.[8]

### 2. Supervisory Liability

#### a. Legal Standard

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). However, "the theory of supervisory liability arises from the obligation of a supervisory law officer to insure that his [or her] subordinates act within the law." *Randall v. Prince George's Cnty, Md.*, 302 F.3d 188, 203 (4th Cir. 2002). "[W]hen on notice of a subordinate's tendency to act outside the law, [a supervisor is obligated] to take steps to prevent such activity." *Id.* at 203. Although not expected to "prevent all illegal acts by his [or her] subordinates," if a supervising officer is "deliberately indifferent to that [supervisory] responsibility, he [or she] then bears some culpability for illegal conduct by his [or her] subordinates, and he [or she] may be held vicariously liable for their illegal acts." *Id.* (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)).

A plaintiff "assumes a heavy burden of proof in supervisory liability cases." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, an inmate must allege facts that satisfy three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of

---

[8] Defendant Johnson argues that Defendant Williams's statement, "I told you all," is insufficient to conclude that the statement was directed to Defendant Johnson or that Defendant Williams was present when Defendant Williams made the prior statement. (ECF No. 33, at 9–10.) While this may ultimately bear out to be true, at this juncture, a reasonable inference may be drawn that because Defendant Johnson was present and she was a person included in the "I told you all."

> constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (alteration in original) (quoting *Shaw*, 13

F.3d at 799).

> To satisfy the first element, a Plaintiff must allege the following:

> (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

*Shaw*, 13 F.3d at 799 (citations omitted). A plaintiff must point to more than "a single incident

or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate

criminal acts of his properly trained employees when he has no basis upon which to anticipate

the misconduct." *Randall*, 302 F.3d at 206 (quoting *Slakan*, 737 F.2d at 373). Under the second

element, a plaintiff must allege "[a] supervisor's continued inaction in the face of documented

widespread abuses." *Slakan*, 737 F.2d at 373 (citation omitted). Finally, the third element

requires plaintiff to allege an "affirmative causal link between the supervisor's inaction and the

harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (citation omitted) (internal quotation marks

omitted).

### b. Mr. Wright Fails to Plausibly Allege a Claim Based on Supervisory Liability

Mr. Wright argues that Defendant Johnson is "liable under a theory of *supervisory*

*liability*" because she acted as a supervisor to Defendant Williams and Defendant Solomon.

(ECF No. 29 ¶¶ 54–55 (emphasis added).) However, Mr. Wright fails to meet the first element

13

of the test for supervisory liability and that is fatal to the claim. Mr. Wright does not plausibly allege that Defendant Johnson had "actual or constructive knowledge that [her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff." *Baynard*, 268 F.3d at 235. As the United States Court of Appeals for the Fourth Circuit noted in *Shaw*, the knowledge element requires that Mr. Wright allege facts indicating a "pervasive" and "unreasonable" risk of harm, which "requires [facts suggesting] that the conduct is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799. Mr. Wright fails to allege any facts that would plausibly suggest that Defendant Williams had previously assaulted an inmate once, much less on more than one occasion. *See Randall*, 302 F.3d at 206 (citation omitted) (requiring more than an isolated incident of misconduct). Mr. Wright also fails to allege facts that would suggest that Defendant Johnson had "actual or constructive knowledge that [her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff." *Baynard*, 268 F.3d at 235. Because Mr. Wright fails to meet the first element of a supervisory liability claim, he has not plausibly alleged a claim that Defendant Johnson was liable for Defendant Williams's conduct based on supervisory liability. Accordingly, the portion of Count I that alleges a supervisory liability claim against Defendant Johnson will be DISMISSED.

### B.   State Law Negligence Claims (Counts II through IV)

#### 1.   Law for Negligence Claims in Virginia

In Counts II, III, and IV, Mr. Wright alleges that Defendant Johnson was negligent. Virginia recognizes three degrees of negligence: (1) simple or ordinary negligence; (2) gross negligence; and, (3) willful or wanton negligence. *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). Despite the manner in which Mr. Wright pled his claims, the three

levels of negligence "do not represent separate claims or theories of liability." *Wilby v. Gostel*, 578 S.E.2d 796, 800–01 (Va. 2003). Instead, the three levels identify the different burdens of proof a plaintiff must meet. *Id.* at 801; *see Knight v. Moore*, 18 S.E.2d 266, 270 (Va. 1942). Based on the evidence presented, the finder of fact determines the appropriate level of negligence after the parties have conducted discovery, on a motion for summary judgment, or during trial. *Id.* at 801. Only when "reasonable minds could not differ," should these issues be decided by the Court. *Poliquin v. Daniels*, 486 S.E.2d 530, 534 (Va. 1997) (citation omitted). "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 157 (4th Cir. 1999) (citation omitted). To avoid being found negligent, that standard of conduct "is that of a reasonable man [or woman] under like circumstances." *Id.* at 158 (citation omitted).

## 2.   Mr. Wright Plausibly Alleges a Claim of Negligence

In Count II, Mr. Wright argues that Defendant Johnson "failed to use the degree of care which in ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." (ECF No. 29 ¶ 58.) In Counts III and IV, Mr. Wright argues that Defendant Johnson also was grossly negligent and willfully and wantonly negligent. (ECF No. 29 ¶¶ 59–64.) While Mr. Wright does not specifically say so, it appears that he attempts to impose liability on Defendant Johnson based on Defendant Williams's alleged statement to Defendant Johnson and her supervisors: "I told you all if someone pisses me off again this was what was going to happen." (ECF No. 29 ¶ 35.) Defendants argue that Mr. Wright fails to allege sufficient facts to state any form of negligence claim. (ECF No. 33, at 11–12.) However, at this stage, the Court must view the Complaint in the light most favorable to Mr. Wright.

a.     **Simple Negligence**

Defendant Johnson argues that Mr. Wright's "state law claims suffer from the same infirmities as Plaintiff's § 1983 claim," because they "are based on the same conclusory and unreasonable argument that merely because Defendant Johnson was present when Defendant Williams made the alleged statement in ¶ 35, to several people in the area, that Defendant Johnson must have been present and aware of Defendant Williams's alleged prior statement." (ECF No. 33, at 11.)  However, the Court has already found that Mr. Wright adequately pled a claim of deliberate indifference based on the same allegations which requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitney v. Albers*, 475 U.S. 312, 319 (1986)); *see id.* (explaining "that deliberate indifference describes a state of mind more blameworthy than negligence" (citing *Estelle*, 429 U.S. at 104)).  Defendants fail to explain why Defendant Johnson had no legal duty to prevent Mr. Wright from harm from her subordinate officers.  Instead, Defendant Williams's statement suggests that Defendant Johnson breached this duty because Defendant Johnson knew of the risk that Defendant Williams could pose to the next inmate who angered her.  While it is not clear here what actions, if any, Defendant Johnson took in response to that known risk or whether Mr. Wright's injury was the proximate cause of Defendant Johnson's breach of duty, at this juncture, Mr. Wright has plausibly alleged that Defendant Johnson failed to use ordinary care to avoid an injury to Mr. Wright. *See Wilby*, 578 S.E.2d at 801 (citation omitted).

b.     **Gross Negligence**

Further, "a claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth . . . Amendment[]." *Dallas v. Craft*, No. 3:21cv349 (DJN), 2022 WL 2079312, at *24 (E.D. Va. 2022) (quoting *Hixson v.*

*Hutcheson*, No. 5:17–cv–0032, 2018 WL 814059, *6 (W.D. Va. Feb. 9, 2018)). "Unlike

deliberate indifference, gross negligence does not require a juror to find that [the defendant]

subjectively knew of a substantial risk; it is enough that [the defendant] should have been aware

of that risk." *Coppage v. Mann*, 906 F. Supp. 1025, 1049 (E.D. Va. 1995). Therefore, "at the

motion to dismiss stage, . . . [a plaintiff who] has stated a claim for deliberate indifference under

the Eighth and Fourteenth Amendments, . . . has also stated a claim for gross negligence under

Virginia law." *Sams v. Armor Corr. Health Servs., Inc.*, No. 3:19cv639 (MHL), 2020 WL

5835310, at *31 (E.D. Va. Sept. 30, 2020) (citing *Hixson*, 2018 WL 814059, at *6).

### c.    Willful and Wanton Negligence

"Willful and wanton negligence is defined as 'acting consciously in disregard of another

person's rights or acting with reckless indifference to the consequences, with the defendant

aware, from his knowledge of existing circumstances and conditions, that his conduct probably

would cause injury to another.'" *Hixson*, 2018 WL 814059, at *9 (quoting *Griffin v. Shively*, 315

S.E.2d 210, 213 (1984)). The definition of willful and wanton negligence "nearly mirrors the

subjective prong of the [Eighth Amendment deliberate indifference] test." *Id.* Thus, because the

Court has already determined that Mr. Wright adequately pled facts that satisfy the subjective

prong of an Eighth Amendment deliberate indifference claim, the Court also determines that Mr.

Wright has adequately pled a claim of willful and wanton negligence to survive at this stage.

Accordingly, the Motion to Dismiss will be DENIED with respect to Counts II, III, IV.

### C.    ADA Claim (Count VIII)

#### 1.    Title II of the Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

17

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir.

2005) (quoting 42 U.S.C. § 12132). To state a claim under the ADA, a plaintiff must allege facts

plausibly asserting that:

> (1) [he or] she has a disability, (2) [he or] she is otherwise qualified to receive the
> benefits of a public service, program, or activity, and (3) [he or] she was excluded
> from participation in or denied the benefits of such service, program, or activity, or
> otherwise discriminated against, on the basis of [his or] her disability.

*Id.* at 498 (citations omitted). "A plaintiff is 'qualified' if [he or] she is 'an individual with a

disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets

the essential eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)).

### 2.    Monetary Damages Are Not Available for Mr. Wright's ADA Claim

Defendants argue that sovereign immunity shields Defendant VDOC from liability for

Mr. Wright's ADA claim for monetary damages. (ECF No. 33, at 12–17.) As discussed below,

the Court concludes that Mr. Wright has alleged violations of the ADA that do not rise to the

level of a constitutional violation. Therefore, the VDOC's sovereign immunity is not disturbed,

and it is immune from suit for money damages here. *See Chase v. Baskerville*, 508 F. Supp. 2d

492, 506 (E.D. Va. 2007), *aff'd*, 305 F. App'x 135 (4th Cir. 2008); *Richardson v. Clarke*,

3:18CV23–HEH, 2020 WL 4758361, at *6 (E.D. Va. Aug. 17, 2020), *vacated in part on other

grounds*, 52 F.4th 614 (4th Cir. 2022). "[I]n the context of state prisons, Title II [of the ADA]

validly abrogates state sovereign immunity and 'creates a private cause of action for damages

against the States' only 'for conduct that *actually* violates the Fourteenth Amendment.'" *Chase*,

508 F. Supp. 2d at 506 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).[9]

In Count VIII, Mr. Wright alleges that he was denied an appropriate bed and unidentified

wheelchair specific accommodations while he was housed in Sussex II.  Mr. Wright did not

bring a corresponding constitutional claim based on these same conditions.  At best, the Court

generously construes Mr. Wright to argue that Defendant VDOC subjected him to unlawful

conditions of confinement under the Eighth Amendment.  However, as discussed below, Mr.

Wright has not adequately pled such a claim.[10]

The Eighth Amendment protects prisoners from cruel and unusual living conditions.

*Rhodes v. Chapman*, 452 U.S. 337 (1981).  To state an Eighth Amendment claim based on

unlawful conditions of confinement, Mr. Wright must allege "a serious or significant physical or

emotional injury," *De'Lonta*, 330 F.3d at 634 (quoting *Strickler*, 989 F.2d at 1381), and facts

indicating that the VDOC knew of and disregarded "an excessive risk to inmate health or safety."

*Farmer*, 511 U.S. at 837.  Mr. Wright contends that the special air mattress that he was provided

as an accommodation for his disability did not fit his bed well, and on one instance, the air

---

[9] "[T]he Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment." *Georgia*, 546 U.S. at 157 (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947)).

[10] Mr. Wright contends that "[t]he allegations in this case actually violate the 14th Amendment, as the 'disparate treatment [was not] reasonably related to any legitimate penological interests,' but rather due to Defendant's complete indifference." (ECF No. 34, at 7 (quoting *Leak v. N.C. Dep't of Pub. Safety*, 2020 WL 58222113, at *3 (W.D.N.C. Sept. 30, 2020).)  The Court fails to follow Mr. Wright's argument.  In *Leak*, the plaintiff raised a claim alleging discrimination under the Equal Protection Clause and the ADA pertaining to work assignments. *Leak*, 2020 WL 58222113, at *1, *3.  The *Leak* court found that the plaintiff failed to allege a Fourteenth Amendment claim, and therefore monetary damages were not available. *Id.* at *4–5.  Mr. Wright raised no claim under the Fourteenth Amendment, much less an equal protection claim alleging disparate treatment.  At best, the allegations would most closely align with an Eighth Amendment conditions of confinement claim.  Notably, Mr. Wright also raised no Eighth Amendment conditions of confinement claim.

mattress flipped causing him to fall out the bed. (ECF No. 29 ¶ 44.) Mr. Wright alleges no injury from this fall, much less a "a serious or significant physical or emotional injury." *De'Lonta*, 330 F.3d at 634 (citation omitted). Mr. Wright also alleges that because Sussex II is not wheelchair accessible, he "had to maneuver his body in uncomfortable positions countless times" and "he endured severe back pain." (ECF No. 29 ¶ 45.) The Court assumes without deciding that severe back pain is objectively sufficiently serious. Nevertheless, Mr. Wright fails to state a plausible violation of his Eighth Amendment rights based on these conditions.

Mr. Wright indicates that he "immediately made . . . accommodation complaints to Sussex II, and Sussex II officials acknowledged that that it did not have the accommodations for Plaintiff." (ECF No. ¶ 46.) Mr. Wright fails to allege facts that plausibly suggest that Defendant VDOC knew of and disregarded an excessive risk of harm to Mr. Wright's health or safety through these vague allegations. While an inmate's complaints to prison administrators may establish a basis for § 1983 liability, the plaintiff must allege facts that suggest "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Therefore, Mr. Wright must allege that because of his complaints, Defendant VDOC "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Mr. Wright's Complaint lacks any detail about the content or manner of transmission of his communications with various Sussex II officials that would cause Defendant VDOC to perceive that he faced a substantial risk of serious harm by being housed in Sussex II for several

months. *Wilson*, 501 U.S. at 298. As such, Mr. Wright's limited factual allegations against Defendant VDOC fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumer affairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Thus, Mr. Wright fails to adequately plead an Eighth Amendment conditions of confinement claim. Because Mr. Wright has not alleged conduct that "*actually* violates the Fourteenth Amendment," Title II fails to abrogate state sovereign immunity, and a "private cause of action for damages" is not permitted here. *Chase*, 508 F. Supp. 2d at 499 (citing *Georgia*, 546 U.S. at 506).

Accordingly, with respect to Mr. Wright's claim for monetary damages under the ADA, the States's sovereign immunity has not been abrogated and Mr. Wright's claim for monetary damages is not available. Mr. Wright's demand for damages under Title II will be DISMISSED WITHOUT PREJUDICE.

### 3.    Mr. Wright's Claim for Injunctive Relief is Moot

Defendant VDOC correctly asserts, and Mr. Wright concedes, that any claim for injunctive relief became moot when Mr. Wright was transferred to a different facility that could accommodate his disability. (*See* ECF No. 33, at 17; ECF No. 34, at 8); *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986))). Thus, Mr. Wright's request for injunctive relief is DISMISSED as moot.

In sum, the portion of Count VIII that demands damages will be DISMISSED WITHOUT PREJUDICE, and the request for injunctive relief will be DISMISSED.

21

### IV.  Conclusion

The Partial Motion to Dismiss, (ECF No. 32), will be GRANTED in part and DENIED in part.  The supervisory liability aspect of Count I will be DISMISSED against Defendant Johnson.  The portion of Count VIII that demands damages will be DISMISSED WITHOUT PREJUDICE, and the request for injunctive relief will be DISMISSED.  The Motion to Dismiss will be DENIED with respect to the direct liability aspect of Count I for Defendant Johnson, and for Counts II through IV.  Any party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

Date: 9|6|2024
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge